Ryan P. Poscablo
212 506 3921
rposcablo@steptoe.com

**Steptoe**

1114 Avenue of the Americas
New York, NY 10036
212 506 3900 main
www.steptoe.com

March 27, 2023

**VIA CM/ECF**

Honorable Dora L. Irizarry
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *US v. 432 North Oakhurst Drive, etc., et al.*, EDNY Case No. CV-22-7410

Dear Judge Irizarry,

      Pursuant to the Court's Order of March 21, 2023, 73DT Business Enterprises, LLC ("73DT") and 7D Business Bureau, Inc. ("7D") (together, "Claimants") hereby oppose the letter motion (the "Motion") of Plaintiff United States of America (the "government") for a premotion conference (Dkt. 22). The government seeks to postpone indefinitely the Claimants' Motion to Dismiss the complaint, filed on March 14, 2023 (the "MTD," Dkt. 20 through 20-8), by essentially erasing its own deadline to respond to the MTD, and asking to be allowed to file a motion of its own "to strike the claims" filed on February 21, 2023. (Dkt. 17, 18). But fugitive disentitlement is not a threshold issue that must be determined before a motion to dismiss. And the government does not even suggest (let alone argue) that it intends to challenge either the statutory or Article III standing of the Claimants, each of which is generally recognized as a "threshold" issue that, when raised by the government, can take precedence over a claimant's motion to dismiss. *See, e.g., United States v. One Lincoln Navigator*, 328 F.3d 1011, 1013-14 (8th Cir. 2003); *United States v. $284,950 in U.S. Currency,* 933 F.3d 971 (8th Cir. 2019). Rather, this motion is a transparent attempt to prevent the Claimants from challenging the Complaint (much less defend against the forfeiture claims) by pursuing a fugitive disentitlement motion. The request is improper and unsupported by the law, and it should be denied.

      In the Motion, the government purposefully conflates two substantively different legal concepts – standing and fugitive disentitlement – for the improper purpose of gaining an unfair procedural advantage that was not intended by Congress or the Rules governing civil forfeiture actions, which require the government to meet a high pleading standard because of the drastic nature of the civil forfeiture remedy. Rule G(2)(f), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (requiring the government to "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."). The heightened standard is intended to protect owners of targeted property from losing their assets on the basis of "conclusory allegations and dubious circumstances," requiring the government to state its forfeiture claims with particularity to ensure that that "the complaint sufficiently notify the [claimant] of the incident in dispute and afford a reasonable belief that the claim has merit." *United States v. Mondragon*, 313 F.3d 862, 854, 865 (4th Cir. 2002) (internal citations omitted).

In their MTD, Claimants have demonstrated that the government has utterly failed to meet that burden – in short, that it has failed to state a justiciable forfeiture claim.

In an effort to avoid the scrutiny that Claimants' MTD will provoke from the Court, the government asks this Court to excuse it from having to respond to the MTD at all, and instead allow it to file a fugitive disentitlement motion that, if successful, would prevent the universe of potential claimants to the defendant assets from contesting their forfeiture, likely resulting in a default judgment of forfeiture. In short, the government seeks to take ownership of assets valued at well over three million dollars in a procedural gambit that will relieve it of having to submit any evidence in support of its claims in either a criminal or civil context, on the basis of unproven allegations in a criminal indictment and insufficient allegations in a civil forfeiture complaint. As discussed below, similar relief may be available where the government seeks to challenge a claimant's standing, but that is not what the government seeks to do here. It acknowledges the filing of the claims with no suggestion that they are inadequate, conceding statutory standing, and it admits in the Complaint and the Motion that the defendant condominiums were acquired and remain titled in the name of claimant 73DT, and the accounts were opened and remain in the name of claimant 7D, establishing Article III standing. Indeed, the government's disentitlement theory actually depends upon Ms. Terekhova being the "sole owner . . . of 7D, which, in turn, is the sole owner . . . of 73DT." Motion at 2. What the government really seeks is to avoid having the Court determine whether it has stated a cognizable forfeiture claim against any of the defendant assets.

Unlike standing, disentitlement is not a threshold issue that must be determined before a motion to dismiss, and the government cites no authority suggesting otherwise. Indeed, disentitlement is discretionary even if the government can establish all of the elements in the statute. *See* 28 U.S.C. § 2466(a) ("a judicial officer *may* disallow a person . . . .) and (b) ("subsection (a) "*may* be applied to a corporation if a majority shareholder" falls within the scope of subsection (a)) (emphasis added). But satisfying the elements of the disentitlement statute is no small thing. The government must demonstrate that the claimant (or its majority shareholder, under subsection (b)) "with notice or knowledge of the fact that a warrant or process has been issued for his apprehension," and "in order to avoid criminal prosecution," either leaves the United States, declines to enter or reenter the United States to answer the criminal charges, or otherwise evades the jurisdiction of the court in which the charges are pending. *Id.* The government cites no authority suggesting that the determination of a disentitlement motion should take precedence over a motion seeking dismissal on the ground that the government has failed to state a claim.

Claimants note also that the government's tactics throughout this case have been unusual, and suggest an effort to gain a procedural advantage in this civil forfeiture case through the use of criminal process, with the Motion being just the most recent example. Andrii Derkach was indicted on September 26, 2022, and Ms. Terekhova was not mentioned anywhere in the indictment by name. The complaint in this action was filed on December 7, 2022. After being granted a brief extension on January 19, 2023, the Claimants timely filed their claims on February 21, 2023. In the meantime, however, the government filed a first superseding indictment ("FSI") in the Derkach case on January 23, 2023, substituting Ms. Terekhova's name in place of the term "Co-Conspirator-1" used throughout the indictment. (The government's assertion that Claimants should be disallowed from defending this case based on Ms. Terekhova's ownership of Claimants

was therefore unavailable to the government before the filing of the FSI, because she had not been charged.) Claimants timely filed their MTD on March 14, 2023, and the government its Motion on March 20, slightly more than a week before its opposition to the MTD was due.

It is also worth noting that in footnote 1 of the Motion, the government states that if the Court denies the Motion, the government will serve Claimants with "special interrogatories." This is an invocation of Supplemental Rule G(6)(a), which allows the government to "serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed," and goes on to provide that "if the claimant serves a motion to dismiss the action," as Claimants have done here, "the government must serve the interrogatories within 21 days after the motion is served." (Emphasis added). The government's deadline to serve special interrogatories here will expire 21 days after March 14, or on April 4, 2023. Rule G(6)(b) provides that responses to Rule G(6)(a) special interrogatories are due 21 days after the interrogatories are served, and subsection (c) provides that "the government need not respond to a claimant's motion to dismiss the action . . . until 21 days after the claimant has answered these interrogatories." Thus, the government's threat to serve special interrogatories in the event of the Court's denial of the Motion, if carried out, will have the effect of delaying the government's obligation to respond to Claimants' MTD for at least 42 days, so long as the interrogatories are served by April 4.

As shown by the plain language of the Rule, the sole purpose of Rule G(6) interrogatories is to test a claimant's standing. If the government believed that Claimants lacked standing, it could have served Rule G(6) interrogatories as soon as the claims were filed, but it did not. Nor did it serve interrogatories following the filing of the MTD. It seems to have mentioned them in the Motion as a warning to the Court that if the Motion is denied, the government will act on its own to delay its obligation to respond to the Claimants' challenge to the Complaint. This sort of exploitation of legal procedures is not only materially inconsistent with fundamental principles of due process, it flies in the face of the explicit limits placed by Congress and the Courts on the government's ability to commence judicial civil forfeiture cases in the first place. Where, as here, a claimant's standing is not reasonably subject to dispute, the government should be compelled to respond to a motion to dismiss for failure to state a claim. If the government cannot articulate a legally cognizable forfeiture claim, it cannot achieve forfeiture as a matter of law. The government's request to preempt the determination of the MTD through a disentitlement motion should be denied.

Respectfully submitted

*Ryan P. Poscablo*

Ryan P. Poscablo
Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, NY 10036
212.506.3900
rposcablo@steptoe.com