UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

        Plaintiff,

        -against-

REAL PROPERTY AND PREMISES KNOWN AS 432 NORTH
OAKHURST DRIVE, CONDOMINIUM UNIT 103, BEVERLY
HILLS, CALIFORNIA 90210, AND ALL PROCEEDS
TRACEABLE THERETO;

REAL PROPERTY AND PREMISES KNOWN AS 432 NORTH
OAKHURST DRIVE, CONDOMINIUM UNIT 203, BEVERLY
HILLS, CALIFORNIA 90210, AND ALL PROCEEDS
TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN STIFEL
NICOLAUS & CO. ACCOUNT NUMBER ENDING
IN 9142, HELD IN THE NAME OF 7D BUSINESS
BUREAU INC., AND ALL PROCEEDS TRACEABLE THERETO;
and

ANY AND ALL FUNDS ON DEPOSIT IN CITIZENS BUSINESS
BANK ACCOUNT NUMBER ENDING IN 7135, HELD IN THE
NAME OF 7D BUSINESS BUREAU INC., AND ALL PROCEEDS
TRACABLE THERETO,

        Defendants *In Rem*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

22-CV-7410
(DLI) (PK)

**UNITED STATES' REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO STRIKE THE CLAIMS FILED BY 7D BUSINESS BUREAU, INC.
AND 73DT BUSINESS PROPERTIES, LLC UNDER THE
FUGITIVE DISENTITLEMENT DOCTRINE**

                                      BREON PEACE
                                      UNITED STATES ATTORNEY
                                      Eastern District of New York

MADELINE O'CONNOR
Assistant U.S. Attorney
Date of Service: September 25, 2023

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................ 1

**ARGUMENT** ............................................................................................................................. 1

    I.    **DERKACH AND TEREKHOVA HAD NOTICE AND KNOWLEDGE OF THE ARREST WARRANTS** ................................................................................ 2

    II.   **TEREKHOVA AND DERKACH ARE NOT CONFINED OR OTHERWISE HELD IN CUSTODY IN ANOTHER JURISDICTION** ............................................ 9

    III.  **TEREKHOVA AND DERKACH HAVE DELIBERATELY AVOIDED PROSECUTION** ................................................................................................... 10

**CONCLUSION** ....................................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

*Collazos v. United States*, 368 F.3d 190 (2d Cir. 2004)……………………..………..1, 2, 4, 9, 10

*United States v. $40,175.00 in United States Currency*, 2021 WL 247783
(D. N.M. Jan. 25, 2021)……………………………………………………………………..8, 9

*United States v. $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30 (D.D.C. 2007)……………......9

*United States v. $6,976,934.65 Plus Interest Deposited into Royal Bank of Scotland Int'l*,
520 F. Supp. 2d 188 (D.D.C. 2007)……………………………………………………...…......9

*United States v. $6,976,945.65 Plus Interest Deposited into Royal Bank of Scotland Int'l*,
554 F.3d 123 (D.C. Cir. 2009)……………………………………………………………….....9

*United States v. All Assets Listed in Attachment A*, 89 F. Supp. 3d 813 (E.D. Va. 2015), *aff'd*,
*United States v. Batato*, 833 F.3d 413 (4th Cir. 2016) ………………………………………..……..4

*United States v. One 1988 Chevrolet Half-Ton Pickup Truck*, 357 F. Supp. 2d 1321
(S.D. Ala. 2005)……………………………………………………………………….………..9

*United States v. Technodyne LLC*, 753 F.3d 368 (2d Cir. 2014)………………..……........4, 9

## STATUTES

28 U.S.C. § 2466..…………………………………………......................................1, 4, 8

## PRELIMINARY STATEMENT

The UNITED STATES OF AMERICA (the "United States" or the "government"), by and through its counsel, Breon Peace, United States Attorney for the Eastern District of New York, Madeline O'Connor, Assistant United States Attorney, of counsel, respectfully submits this memorandum of law in support of its Motion to Strike the claims filed by 7D Business Bureau, Inc. ("7D") and 73DT Business Properties, LLC ("73DT") (collectively, "Claimants").

## ARGUMENT

The Court should exercise its sound discretion to disallow the claims filed by 7D and 73DT (the "Claims") because the requirements of 28 U.S.C. § 2466 have been met, and to prevent "the unseemly spectacle" of Derkach and Terekhova, "who, facing both incarceration and forfeiture for [their] misdeeds, attempt[] to invoke from a safe distance only so much of a United States court's jurisdiction as might secure [them] the return of alleged criminal proceeds while carefully shielding [themselves] from the possibility of . . . penal sanction[s]." *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004).

Claimants do not dispute that two of the five prerequisites for disentitlement have been satisfied as to both Derkach and Terekhova, *i.e.*, that (1) warrants for the apprehension of Derkach and Terekhova have been issued in the criminal case, *United States v. Andrii Derkach and Oksana Terekhova*, 22-CR-432 (S-1) (DLI) (E.D.N.Y.) (the "Criminal Case"); and (2) the Criminal Case is related to the instant forfeiture action. And Claimants have failed to sufficiently dispute the government's showing regarding the other three prerequisites, *i.e.*, that (3) Derkach and Terekhova "must have had notice or knowledge of the warrant[s]"; (4) Derkach and Terekhova are not "confined or otherwise held in custody in another jurisdiction"; and (5) Derkach and Terekhova "have deliberately avoided prosecution by (A) purposefully leaving the

1

United States, (B) declining to enter or reenter the United States, or (C) otherwise evading the jurisdiction of" the Court in the Criminal Case. *Collazos*, 368 F.3d at 198. Instead, Claimants resort to semantics and mischaracterizations aimed at distracting the Court from the evidence at hand. The Court should exercise its sound discretion to order disentitlement in this case.

I. **DERKACH AND TEREKHOVA HAD NOTICE AND KNOWLEDGE OF THE ARREST WARRANTS**

The government presented evidence that Derkach had notice of, or at least reason to know of, the Criminal Case and the arrest warrant. *See* DE 28-1 at pp. 16-17. In response, Claimants inaccurately assert that "Derkach's knowledge of the indictment against *him* is not at issue here," because the Government's Memorandum of Law in Support of its Motion to Strike the claims filed by 7D Business Bureau, Inc. and 73DT Business Properties, LLC ("the Government's Motion to Strike") allegedly addresses only Terekhova's fugitive status because she is the "majority shareholder of 7D, which is the sole member of 73DT." DE 32 at p. 14.

Contrary to Claimants' mischaracterizations, the Government's Motion to Strike in no uncertain terms seeks fugitive disentitlement based on *both* Derkach's and Terekhova's fugitive statuses, as well as their joint control over 7D and 73DT. *See, e.g.*, DE 28-1 at p. 4 ("Derkach *and* Terekhova seek to challenge the forfeiture . . . through *their* entities, 7D and 73DT, using a nominee to represent the entities, while *they* remain beyond the jurisdiction of the Court in the Criminal Case. However, the doctrine of fugitive disentitlement bars fugitives, such as Derkach *and* Terekhova, from exploiting the judicial process to *their* advantage in a civil case, while scoffing at the Court in a related criminal case.") (emphasis added).

Claimants acknowledge that the Complaint and the Government's Motion to Strike assert that Derkach has an ownership interest in 7D, 73DT and the defendants *in rem*. *See* DE 32 at p. 1. But Claimants nevertheless imply that the government's assertion that "Derkach has no

2

'apparent' ownership or involvement in" 7D and 73DT constitutes an admission that Derkach had no *actual* control over 7D and 73DT. *Id.* at p. 15. In fact, the Superseding Indictment, the Complaint, and the Government's Motion to Strike directly contend, and the evidence shows, that *both* Derkach and Terekhova established 7D and 73DT for the specific purpose of *concealing* Derkach's connection to and control over the entities and the financial transactions associated with the defendants *in rem*. *See, e.g.*, DE 28-1 at p. 8 ("Terekhova *and Derkach* utilized a multi-tiered structure of California-based shell companies – namely, 7D and 73DT – to purchase and maintain, and to *conceal* Derkach's interest in the Defendants *In Rem*.") (emphasis added); Criminal Case, DE 9 at ¶ 14 ("The Nominee assisted *DERKACH and* TEREKHOVA in setting up and managing several corporate entities designed to hide DERKACH's ownership interest in the Subject Condominiums and related financial holdings.") (emphasis added); Criminal Case, DE 9 at ¶ 18 ("*At the direction of the defendants ANDRII DERKACH and OKSANA TEREKHOVA*, the Nominee established two corporate entities in California: [73DT] and [7D] . . . . DERKACH's name did not appear in the corporate documents for either 73DT or 7D. Notably, 'DT' were the letters correlating to initials of DERKACH and TEREKHOVA's last names, respectively.") (emphasis added); *see also* DE 29 at ¶ 9. Therefore, the Court should reject Claimants' misreading of the government's position.

Furthermore, the government demonstrated that there was "sufficient information" that would have put Derkach on notice of the criminal charges, *i.e.*, the vast media coverage that must have alerted Derkach to the criminal charges against him and his wife's receipt of the Superseding Indictment from her counsel. *See* DE 28-1 at p. 16. Even more significantly, ample evidence shows that Derkach was aware of the pending criminal charges: he and his family had prepared for and were expecting the sanctions and related criminal and civil litigation against

him and his interests. *Id.* at pp. 16-17.[1] Should there be any doubt that Derkach had notice of the criminal charges against him, Claimants' own exhibit – a letter from counsel for Yosef Manela ("Manela")[2] to *both Derkach and Terekhova*, enclosing, *inter alia*, a copy of the Indictment – evidences that Derkach received direct notice of the criminal charges. *See* DE 32-2.

Notably, that letter belies Claimants' assertions that Terekhova acquired the defendants *in rem* and owned 7D and 73DT on her own, and that she divorced Derkach in February 2020. *See* DE 32 at pp. 6-7, 24 n.17. The letter was dated December 19, 2022 – almost three years after the alleged divorce – but was addressed to *both* Derkach and Terekhova, not just Terekhova. *See* DE 32-2. The letter specifically mentions the defendants *in rem* in this action, addresses the filing of claims in this action, and attaches numerous documents issued in this action, including, *inter alia*, the Verified Complaint *In Rem*, the Direct Notice Letter, and the Notice of Pendency of Action. *Id.* Thus, the letter provides strong evidence that Derkach always had and continues to have an interest in 7D, 73DT and the defendants *in rem*.

---

[1] Claimants suggest that the Court should disregard evidence they describe as being hearsay. *See, e.g.*, DE 32 at p. 19. However, even assuming the government has supported its motion, in part, with hearsay, 28 U.S.C. § 2466 does not preclude the Court from considering hearsay. Indeed, the Second Circuit has held that the Court has "considerable discretion . . . to determine the nature of the necessary hearing on a disentitlement motion." *United States v. Technodyne LLC*, 753 F.3d 368, 382 (2d Cir. 2014) (noting that a claimant can prevent disentitlement by appearing in the related criminal action) (citing *Collazos*, 368 F.3d at 205). The district court in *United States v. All Assets Listed in Attachment A*, 89 F. Supp. 3d 813 (E.D. Va. 2015) considered similar evidence in an agent's declaration. *Id.* at 830-31 (considering FBI agent's declaration which discussed, *inter alia*, statements made by one of the claimants to a third party concerning the claimant's hope to discuss his defense strategy with a lawyer; statements made by the claimant in conversations concerning the claimant's hope that the charges would be dismissed pursuant to his counsel's motions; and statements made by another claimant to a third party concerning his inability to travel), *aff'd*, *United States v. Batato*, 833 F.3d 413 (4th Cir. 2016). In any event, the government has provided ample evidence -- that Claimants do not object to as being hearsay -- to support its motion.

[2] Manela is the nominee who was hired by Derkach and Terekhova to establish 7D and 73DT. *See, e.g.*, DE 28-1 at p. 7.

Claimants' arguments regarding Terekhova's notice and knowledge of the criminal charges similarly fall short. The government presented evidence that Terekhova's attorneys were made aware of and received copies of her arrest warrant and the Superseding Indictment. DE 28-1 at p. 16. In response, Claimants incorrectly assert, by selectively quoting portions of the email correspondence, that counsel for Terekhova in the instant civil case never confirmed representation of Terekhova in the Criminal Case, and, thus, notice to counsel of the Superseding Indictment and Terekhova's arrest warrant cannot be attributed to Terekhova. *See* DE 32 at pp. 16-17. In fact, a review of the entire relevant correspondence demonstrates that Terekhova's counsel did confirm representation of Terekhova in the Criminal Case:

>  **Email from AUSA Artie McConnell, dated February 6, 2023, 2:24 PM, to,** *inter alia*, **attorneys Steven Welk and Ryan Poscablo**:
>
>> Counsel,
>> I am the AUSA handling the Derkach criminal matter. I understand you are representing Oksana Terekhova on some related civil matters. Are you representing her on the criminal case as well? Please let me know at your convenience. Thanks.
>
> **Reply email from attorney Ryan Poscablo, dated February 6, 2023, 3:21 PM, to AUSA Artie McConnell**:
>
>> Hey Artie.
>> I'm your huckleberry. Let me know how I can be of service.
>> Ryan
>
> **Reply email from AUSA Artie McConnell, dated February 7, 2023, 1:26 PM, to,** *inter alia*, **attorneys Steven Welk and Ryan Poscablo**:
>
>> Hi Ryan, thanks for getting back to me. Just making sure you are the POC and that you're aware of the superseding indictment/arrest warrant. Judge Irizarry's chambers had asked me if either of the defendants will be appearing – I assume that Terekhova will not be coming to the U.S. and surrendering? Let me know if that's the case. Happy to discuss anything else at your convenience.
>> Artie
>
> **Reply email from attorney Ryan Poscablo, dated February 7, 2023, 1:58 PM, to AUSA Artie McConnell**:

> I had not realized. Can you send along the indictment and arrest warrant please? Let me review and revert.
> Ryan

DE 32-3.[3]

In the first email, AUSA McConnell asked only one question, *i.e.*, whether counsel was "representing [Terekhova] on the criminal case as well," to which counsel responded in the affirmative: "I'm your huckleberry. Let me know how I can be of service." DE 32-3. AUSA McConnell then confirmed Terekhova's counsel's representation by stating, "Just making sure you are the POC and that you're aware of the superseding indictment/arrest warrant." *Id.* AUSA McConnell then pointedly asked whether Terekhova would be "coming to the U.S. and surrendering." *Id.* Even if Mr. Poscablo's initial response could be construed as something other than a confirmation of his representation of Terekhova in the Criminal Case, it is inconceivable that Mr. Poscablo would not have clarified to the government that he did not represent Terekhova in the Criminal Case upon receiving AUSA McConnell's inquiry as to whether Terekhova would be returning to the United States and surrendering.

Noticeably absent from Mr. Poscablo's Declaration (DE 32-1) is any statement confirming that he did not, in fact, provide Terekhova with copies of her arrest warrant and the Superseding Indictment. Indeed, even if the Court were to believe that Mr. Poscablo did/does not represent Terekhova in the Criminal Case, it defies belief that counsel for a client in a civil case[4] would not notify and address with his client the criminal charges against her upon learning of such charges, especially when the criminal and civil cases are directly related, and when the

---

[3] AUSA McConnell then immediately sent copies of the Superseding Indictment and arrest warrant to counsel. *See* DE 31 at ¶ 6.

[4] There is no dispute that counsel represents Terekhova in the civil case. *See* DE 32-4 (email from counsel stating that they represent 73DT, 7D and Terekhova in the civil case).

6

criminal charges would affect his fugitive client's ability to assert claims in the civil case, as is the case here.[5] In fact, the charges against Terekhova were undeniably within the scope of counsels' representation of her in this civil case given that counsels' own filing in the civil case specifically addressed the Superseding Indictment's charges against Terekhova. *See, e.g.*, Claimants' opposition to the government's premotion conference letter, DE 23 at p. 2.

Further, there was no reason for Mr. Poscablo to request copies of the Superseding Indictment and arrest warrant unless he was representing Terekhova in the Criminal Case or such documents *were* within the scope of his representation of Terekhova and her entities in the civil case. As such, counsels' notice of the criminal charges should be deemed notice to Terekhova.

Moreover, there is additional evidence to demonstrate that Terekhova was actually aware of the criminal charges against her. As discussed above, Derkach, Terekhova and their family had prepared for and were expecting the sanctions and related criminal and civil litigation. *See* DE 28-1 at pp. 16-17. Significantly, it was not only Derkach, but also Terekhova, and their adult children, who fled the United States and have not returned. *See* DE 29 at ¶ 21. If, as Claimants suggest, Terekhova were truly divorced from Derkach, had no knowledge of the criminal charges against her, and were the only beneficial owner of the defendant *in rem* condominiums, then Terekhova and her children would have had no reason to leave and stay out of a country that they had routinely traveled to and partially resided in for the seven years prior to Derkach being sanctioned. *See id.* at ¶¶ 20, 21.

Terekhova's actions with regard to the instant civil forfeiture case further demonstrate

---

[5] Terekhova's counsel received notice of the Superseding Indictment and Terekhova's arrest warrant on February 7, 2023, which was weeks before 7D and 73DT filed their claims on February 21, 2023. *See* DE 17 (7D's Claim); DE 18 (73DT's Claim). Therefore, the charges against Terekhova were undeniably relevant to whether she and her entities could assert claims in this action.

7

that she was aware of the criminal charges against her. *See* DE 28-1 at p. 17. Terekhova and Derkach established 7D and 73DT in a manner that only Terekhova and Manela were overtly connected to the entities. *See id.* at pp. 8-10. Since Manela ceased working for Derkach and Terekhova after the Superseding Indictment was returned, *see* DE 29 at ¶ 18, the only logical person to assert a claim on behalf of 7D and 73DT in the instant civil forfeiture action was Terekhova, especially if Terekhova were truly divorced from Derkach, were the sole owner of 7D and 73DT, and had no notice or knowledge of the criminal charges against her. Instead, however, in an eleventh-hour maneuver, Terekhova and Derkach used the nominee, Sagaev – who, based on corporate documentation (*see, e.g.,* DE 30-3; DE 30-4; DE 30-5; DE 30-6) and Claimants' own verified statements,[6] had no prior affiliation with 7D and 73DT – to file the Claims on behalf of the entities. These facts support the conclusion that Terekhova was well aware of the criminal charges against her, and was well aware that she, as a fugitive, could not directly challenge the forfeiture in the related civil forfeiture action. *See United States v. $40,175.00 in United States Currency*, 2021 WL 247783, at *2 (D. N.M. Jan. 25, 2021) ("Importantly . . . , "a [§ 2466 knowledge] finding may be supported by circumstantial

---

[6] Contrary to Claimants' argument (DE 32 at p. 20), the government submitted ample evidence of Sagaev's lack of prior affiliation with 7D and 73DT, including, *inter alia*, Claimants' responses to Special Interrogatories. These responses pointedly omitted mentions of a prior relationship between Sagaev and Claimants by describing Sagaev's relationships with them as exclusively "current." Special Interrogatory No. 1 to 7D (DE 30-1 at pp. 3-4) expressly asked 7D to "[i]dentify *any and all* relationships between [it] . . . and[] Sagaev," to which 7D responded that "Sagaev is the *current* Director, President, Secretary and Chief Financial Officer of" 7D. (emphasis added). Similarly, Special Interrogatory No. 1 to 73DT (DE 30-2 at pp. 3-4) expressly asked 73DT to "[i]dentify *any and all* relationships between [it] . . . and[] Sagaev," to which 73DT responded that "Sagaev is the *current* Manager and Chief Executive Officer of" 73DT. (emphasis added). Further, even if the Court were to accept Claimants' unsupported assertion that Sagaev's affiliation with 7D and 73DT commenced on February 18, 2023 -- 3 days prior to the filing of the Claims, rather than at some point thereafter -- their assertion would demonstrate that Sagaev was hired for the purpose of filing the Claims. *See* DE 32 at p. 11.

evidence.") (citing *Collazos*, 368 F.3d at 205; *Technodyne LLC*, 753 F.3d at 378). At the very least, the facts, taken as a whole, demonstrate that Terekhova had reason to know of the charges against her. *See United States v. $6,976,945.65 Plus Interest Deposited into Royal Bank of Scotland Int'l*, 554 F.3d 123, 129 (D.C. Cir. 2009) ("All the statute requires is knowledge of an arrest warrant's issuance or notice–that is, reason to know-of that fact.").

## II. TEREKHOVA AND DERKACH ARE NOT CONFINED OR OTHERWISE HELD IN CUSTODY IN ANOTHER JURISDICTION

The government met its burden of showing that Terekhova and Derkach are not confined or otherwise held in custody in another jurisdiction. *See* DE 28-1 at p. 18. Claimants have come forward with no evidence to demonstrate that Derkach or Terekhova is, in fact, confined or in custody in another jurisdiction -- evidence that would certainly be in the possession of Claimants' counsel who also represent Terekhova. Instead, Claimants criticize the holding in *United States v. $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30, 40-41 (D.D.C. 2007) that "[c]ourts find this prong to be established when there is no suggestion that the individual at issue is in custody somewhere." DE 32 at p. 20.[7] Claimants argue, incorrectly, that *$6,976,934.65* is the only decision to so hold. In fact, the Second Circuit so held in *Collazos*. *See Collazos*, 368 F.3d at 201 (holding that the district court did not abuse its discretion in ordering disentitlement because, *inter alia*, "nothing in the record indicate[d] that Ms. Collazos was ever confined, incarcerated, or otherwise unable to travel to the United States of her own volition in the months before the district court ordered disentitlement."); *accord $40,175.00*, 2021 WL 247783, at *3 (same); *United States v. One 1988 Chevrolet Half-Ton Pickup Truck*, 357 F. Supp. 2d 1321,

---

[7] Claimants inaccurately assert that the decision in *$6,976,934.65*, 478 F. Supp. 2d 30 was reversed. *See* Claimants' Opposition, DE 32 at p. 20. In fact, the D.C. Circuit decision at 554 F.3d 123 (D.C. Cir. 2009) cited by Claimants reversed the decision at 520 F. Supp. 2d 188 (D.D.C. 2007), not the decision at 478 F. Supp. 2d 30.

9

1328 (S.D. Ala. 2005) (same). Accordingly, the government has satisfied this prerequisite.

### III. TEREKHOVA AND DERKACH HAVE DELIBERATELY AVOIDED PROSECUTION

The government has shown that the actions of Derkach, Terekhova and their daughters have demonstrated their intent to flee the United States and not return. *See* DE 28-1 at pp. 18-19. In response, Claimants argue that "the government does not allege that Terekhova had any reason to [re]enter the United States." DE 32 at p. 23. Claimants thereby ignore the government's evidence that Derkach, Terekhova and their family regularly traveled to and partially resided in the United States prior to the sanctions and the Criminal Case. *See* DE 28-1 at pp. 18-19. Indeed, the government's evidence that Derkach and Terekhova partially resided in one of the defendant *in rem* condominiums belies Claimants' argument that the government did not allege that Terekhova "resides here." DE 32 at p. 23. Further, the evidence shows that Derkach and Terekhova's exodus from the United States was in direct temporal proximity to, and driven by, the impending sanctions against Derkach. DE 28-1 at pp. 18-19. Thus, "the totality of the circumstances" sufficiently demonstrates that Derkach and Terekhova have deliberately avoided prosecution. *Collazos*, 368 F.3d at 201.

### CONCLUSION

For the foregoing reasons and the reasons set forth in the Government's Motion to Strike, the government respectfully requests that the Court strike the Claims filed by 7D and 73DT.

| | |
|---|---|
| Dated: Central Islip, New York<br>September 25, 2023 | BREON PEACE<br>United States Attorney<br>Eastern District of New York<br>*Attorney for Plaintiff*<br>610 Federal Plaza<br>Central Islip, New York 11722 |
| By: | */s/ Madeline O'Connor*<br>Madeline O'Connor<br>Assistant U.S. Attorney<br>(631) 715-7870 |

10